Okay, our next case is Liu v. Monthly, we'll call it, I suppose. Mr. Urbancic, whenever you're ready. Good morning, your honors. May it please the court. Appellants are some of the throng of Chinese sellers who have been sued in this district court for alleged IP infringement. In this particular case, the rights holders' grievance concern the appellant's alleged infringement of Apelli's trademark for a stylized set of Chinese kanji characters representing the English words Grand Canal, per a basic translation. A plaintiff ostensibly has a federal trademark registration for that mark covering soap products. Mr. Urbancic, what's your best guess as to what happened here in the district court? Your argument is that there's clearly no personal jurisdiction because you've never sold anything in Illinois and there's no proof that you did. And the district court denied the motion to reconsider and is exercising jurisdiction over a party which it seems there is no jurisdiction. I believe Judge Blakey in his admitted entry, which was a bit perfunctory, cited one case for the proposition that the defendants had waited too long. That they delayed for five months or so, which is not the correct standard when bringing a motion to vacate a default judgment under Rule 60B-4 for the judgment being void. Your motion to vacate acknowledges that quick action to vacate the default judgment is required once a defendant learns of the judgment. And I didn't see, there might be, but I might have missed an explanation as to why it took the defendants five months to file their motion to vacate. I mean, I realize, okay, that the defendants had to review their records and hire counsel, but absent an explanation as to why that took five months, why would it not be within Judge Blakey's discretion to deny the motion for lack of timely action? Your Honor, I believe a motion brought under 60B-4 that the default judgment was void is indifferent to a timeliness requirement. In our motion, we explain that the defendants were nevertheless acting promptly as the declarations that supported the motion for motion to vacate the default judgment explained the defendants learned about the case, I think in August of 2024. And I believe when the Joy Buy group informed them of what was going on, I think to Judge Kirsch's initial question, what the larger problem here was, was the proxy relationship that Joy Buy as a sub-platform in the case created. One with rendering the affidavit of service that the plaintiff filed invalid because it didn't identify the email addresses to which service was executed. And . . . Right. You pointed out that serving process on the Joy Buy platform would not function as service on the individual Joy Buy defendants who use that platform. Can we be certain that had the plaintiff contacted the Joy Buy platform instead of walmart.com, that Joy Buy would have provided email contacts for each of the Joy Boy, the Joy himself, the Joy Buy defendants? Here's what I'm wondering. Who bears responsibility for the alleged lack of electronic service? The plaintiff does, ultimately. It's the plaintiff's burden to establish the court's personal jurisdiction. It's the plaintiff's case. It's the plaintiff's burden to show that . . . to prove, ultimately, through its return of service that the defendants were all served with process, have been appraised of defending litigation, and have had an opportunity to show up and fight the claims off. To your honest question about how can we be sure whether Joy Buy would have complied with the TRO, which it should have been served with, immediately after the plaintiff received the expedited discovery from Walmart, Joy Buy is very active. They have counsel that have appeared in the Northern District of Illinois and maybe before this court many times. And they are trumpeting from the cliffs about how they are this platform and that they help smaller sellers take advantage of larger marketplaces by basically obviating store registration requirements for small sellers that can be onerous. Joy Buy storefront, because it's larger and sells lots of products, will have an increased SEO presence. So there's a benefit to a smaller seller who maybe can't go through the registration process that an Amazon or a Walmart might require to sign up with Joy Buy, act as sort of a child storefront, and then do business. And I think Joy Buy provides some other administrative services. Mr. Robinson, I have a question about your argument, because maybe I misunderstood something. I have the district court's minute order in front of me. And the district court says, defendants argue that this court lacked personal jurisdiction, but this court previously held otherwise, finding personal jurisdiction based upon defendants' maintenance of interactive websites and sales to customers within the state of Illinois. That's wrong. There is no evidence that your clients sold to customers in Illinois, right? At least, I understand your arguing to me that that's wrong, that that's a factual error. That's a factual error, at least insofar as we introduced that set of circumstances when we filed the motion to vacate. Prior to that, the plaintiff is filing his complaint, making allegations on information and belief, filing a motion for interpretive fault at some point against the defendants who don't show up. And whatever they're saying is going to be determined true if the defendants don't show up. And introduce an affidavit or some other records. From the plaintiff's standpoint, they're going to send a TRO, a preliminary injunction motion, to the platforms. They get discovery back to see what sales there might have been. Perhaps it comes back in a particular storefront. It's zero sales. Does that mean that particular defendant, as a matter of fact, never sold any accused items? Well, no, because the storefront is just returning information based off of the product that's identified in the TRO itself. Amazon or Walmart isn't going to go back and dig around for other instances. No, I understand. But they were dealing with particular issues, particular products. That's correct. Once the default judgment was entered, Judge Blakey made the conclusion that whatever the plaintiff said was true and that the defendant did, as a matter of law, offer to sell products and sell products into the forum. But that's not a matter of law. Selling products into the forum is not a matter of law. That's a question of fact. Did you do it or did you not? The defendant did not. Right. I thought your argument was, and maybe I'm just confused on the argument here, but when Judge Blakey found that personal jurisdiction was based on the defendants of maintenance of interactive websites, that's not enough. Our law is clear on that. That's correct. And sales to customers within the state of Illinois. I took your argument to be that that is factually wrong. That is the argument. And, therefore, there is no personal jurisdiction. And so Judge Blakey made an error in fact in his minute order, which requires reversal. And the question for us is do we reverse and tell him to dismiss the case or do we reverse and tell him to consider timeliness issues or other things that might keep you in the case? I actually have a third option. Do we let your client off the hook because plaintiff didn't respond to the motion to vacate? You know, and that there's a waiver issue here. I want to look behind the default judgment and, you know, assuming that everything in the complaint is true and talk about what the screenshots show from the plaintiff. The screenshots, is it correct they do not actually show sales to Illinois? They show the capacity to ship to Illinois, but do they actually show sales to Illinois? Those screenshots that were put in probably through the TRO, maybe. They would have been exercises in going through the ordering process. So it wasn't. But they show confirmed sales in Illinois. No. The evidence the plaintiff relied on wasn't the defendant's. Was that evidence of defendant's sales into the district to anybody or to, like, a testifier? I mean, most of the time a plaintiff, if they're conducting an investigation, they'll get their product into an office, take pictures, and then those pictures will go along with the declaration supporting the TRO motion. So the court can say, okay, well, here's the box. It shows Chicago. Okay, so it's here. That's fine. That's jurisdictionally sound. That's not what happened here. Now, Judge Blakey disregarded the defendant's affidavits and evidence they're with, showing that there were no sales. The plaintiff, not long after we filed a motion to vacate, his attorney withdrew. I think between the time the motion to vacate was filed and the court's decision that might have been five months, four months or so, never heard anything from the plaintiff. How do we know what Judge Blakey considered and what he didn't? I guess we don't. I mean, maybe he just made a mistake. It's the minute entry that says there were sales to customers within the state of Illinois. There's no evidence of that in the record. Is there any evidence of that in the record? Maybe I should just ask you. No, no. And as an officer to the court, I don't know why Judge Blakey ruled the way he did. And Judge Blakey is author of two district court opinions, American Bridal and I think Rubik's Cube, that are very, very often cited in all of these personal jurisdiction arguments. The affidavits were supported by the sales records. And as Judge Maldonado said, the plaintiff never responded. No, the plaintiff never responded to a motion to vacate. Never contested those affidavits or those facts.  I suppose the plaintiff could have, if for whatever reason didn't feel like drafting a response brief, could have submitted some kind of affidavit or something, like just throwing it up there for the court's attention. That didn't happen. The plaintiff clearly didn't file a brief in the appeal. Amicus has showed up to help them out. Right. Yeah, the plaintiff is gone. And by the way, that raises a whole other issue whether we should even consider their arguments. We usually don't consider arguments of Amicus on their own. Sure. But that's not a question for you. As far as what the defendants can expect here, if it is reversed, what would likely happen is it would be remanded for an evidentiary hearing. Like I mentioned before, simply because, to be sure, simply because the defendants are introducing a declaration that shows the product that the plaintiff was originally complaining about, there are no sales. The plaintiff isn't around to contest that, so I guess there's still this… Yeah, I don't know that anybody wants an evidentiary. …pretending that the plaintiff might still come back if and after the case is remanded for an evidentiary hearing. I suspect Judge Blakey would set a status hearing to talk about next steps. Do you want to save some time for rebuttal or not? It's up to you. Quickly, I think Judge Blakey would set a status hearing. The plaintiff would probably not show up. Judge Blakey might continue at once. The plaintiff probably won't show up again. And then we would move to dismiss the case for lack of prosecution. I suspect that's what would happen. And I'll reserve the rest of my time for rebuttal. All right, thank you. All right, Mr. Gato. Good morning. May it please the Court, Justin Gaudio, appearing on behalf of the Strategic Alliance for Fair E-Commerce, also known as SAFE. Thank you for allowing me to appear today. This is an important case. Mr. Guado. I'm wondering as a threshold matter why we should consider upholding a default of judgment that the plaintiff is uninterested in defending. Well, of the options presented, you know, we believe that given the uncertainty regarding the facts, a remand would be appropriate, or the argument that the case should be dismissed because all the arguments were waived. What we don't believe is appropriate under the murky facts in this case is reversing and dismissing because of the jurisdictional issues involved. They could adversely affect other cases involving the enforcement of foreign online stores. Would it be odd? I mean, I guess. Go ahead, Judge Roldner. Go ahead. Well, we'd be giving an opinion without having the right to give an opinion. It would be, you know, like a pretend opinion. Right. And that's what we would ask the court to avoid doing under the unique circumstances of this case where the appellee has not shown up, there's one side of facts presented, which there's some questions regarding those affidavits, the uncertainty and trustworthiness of them. So we think a remand to address those issues and flush that out more is the appropriate mechanism, not reversing and dismissing, which amounts to a bright line rule on jurisdiction based on an incomplete argument and facts. So the first issue that was raised was one of timing and notice. You know, the district court said that they waited too long to come in. This was brought under Rule 60B. Can I interrupt for one second? What I was trying to think of, the word I didn't get was advisory. Correct. Yes, we agree. I like pretend better.  Yeah, an advisory opinion would not be appropriate, and that's not what we're seeking or asking the court to do. You've only entered your appearance as amicus in the appeal. That's correct. I'm not representing the appellee. So I get it. So your argument is send it back to the district court, and then what happens there happens there to this particular case.  I mean, the issue is you agree that there are no facts in the record that establish that this particular defendant sold products in Illinois, right? You know, I agree the record's incomplete. When you look at jurisdiction, the leading case on this is NBA Properties, which tells us to look at jurisdiction holistically. It's not just sales, but the actions taken by the sellers in structuring their business leading up to those sales and offer for sales. And in footnote 18 of that case, the court explicitly recognizes the offer for sale as an independent cause of action for trademark infringement. So to require a sale essentially eliminates that cause of action in the context of an e-commerce store. Now, I'm not saying that there needs to be a sale or doesn't need to be a sale. What I'm saying is there's more to it than that. This is a store on the wall. You could target a particular state or citizens in a particular state for some particular reason, right? The Walmart platform where it only sells in the United States. And when you sign up for a Walmart store, you can choose which states you want to sell to and which ones you don't. So there's other facts that you could look at and point to and say, you know, they set up their store to take offers from Illinois. They have the capacity to ship products to Illinois, except money from Illinois residents. And I think the court in Hemi sums it up well with a quote where they say, it's the seller reaching out that establishes the jurisdiction, not the Illinois residents reaching back. So in setting up the store, having that offer for sale, that's the reaching out. The buys are the sellers reaching back. And whether a seller happens to buy in Illinois or some other state, doesn't seem like that as a bright line rule should be what establishes jurisdiction or not. There's more to it than that. And that's why we don't think that this record is complete enough to make that type of bright line rule that could affect other cases. Okay, thank you. I have one question. We haven't opined as a circuit in a schedule case on whether a sale is sufficient in the Schedule A context, have we? Because we've said it in other contexts. Is this the first time this issue has come up to us? Without a sale? Yes. That's my understanding, yes. Which is why you're here. MBA, there was a sale. And then there's other cases involving online stores. But there were unrelated sales or they weren't offering to sell the product. So this is the first context. And just one other quick point on the delay. Since this was fully briefed this past month, as the court may be aware, the U.S. Supreme Court has decided that in the context of a Rule 60B4 motion, there is a time consideration, which up until then was not the case for many circuits. And that's Coney Island Auto Parts Unlimited versus Burton. So that was brought up in the previous argument, and I just wanted to bring that to the court's attention. So with that and the evidence presented, including the Walmart screenshots, you know, some of the murkiness in the affidavits, the piecemeal images, no explanation as to how those images were created. Many of them are in a foreign language. They don't address other potential relevant sales. And, again, I understand it's because there's nobody on the other side, but this is not the vehicle to come up with a new bright line rule in jurisdiction. The appropriate action is to remand it for further proceedings to flush out the jurisdictional issues here. Okay, thank you very much. Thank you. Mr. Vancic, will you have anything to add? Quickly, the appellates don't challenge the analysis of Advanced Technical Ordinance Systems, LLC, the real action paintball, 751 F3rd 796 back in 2014. That opinion has not been abrogated by later opinions, such as this court's opinion in Curry v. Revolution Laboratories, LLC, 949 F385, or the aforementioned NBA properties. We don't challenge that analysis or propose that the court create some bright line rule that shipment of an accused item into the forum is a requirement for a district court to have personal jurisdiction. Indeed, a defendant could have any number of contacts, commercial contacts with the forum, that might avail itself of the privilege of doing business there without actually having sold anything, to be sure. We think Judge Blakey's opinion contains reversible error and that reversal with a remand, I think technically the most appropriate thing would be a remand for some kind of evidentiary hearing, would still be squarely in line with and not contravene this court's holdings in at least NBA properties, Curry, and Advanced Technical Ordinance Systems. Thank you. Okay, thank you very much. The case will be taken under advisement.